## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

DHRUV POSTIWALA, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

ARDENT HEALTH, INC., MARTIN J. BONICK, and ALFRED LUMSDAINE,

Defendants.

**Case No.**

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**DEMAND FOR JURY TRIAL**

Plaintiff Dhruv Postiwala ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters. Plaintiff's information and belief are based upon the investigation of Plaintiff's counsel, which included, among other things, review and analysis of: (1) regulatory filings made by Ardent Health, Inc. ("Ardent Health" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (2) wire and press releases published by the Company; (3) analyst and media reports concerning Ardent Health; and (4) other publicly available information regarding Defendants (defined below). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Ardent Health securities between July 18, 2024 and November 12, 2025, inclusive, and were damaged thereby (the "Class Period"). Plaintiff asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against: (i) Ardent Health, (ii) the Company's Chief Executive Officer ("CEO") Martin J. Bonick ("Bonick"), and (iii) the Company's Chief Financial Officer ("CFO") Alfred Lumsdaine ("Lumsdaine").

2. Ardent Health and its affiliates operate acute care hospitals and other healthcare facilities. Ardent Health generates virtually all its revenue from "net patient service revenue," which consists of revenue from general and specialty services, including internal medicine, general surgery, and emergency services, within inpatient and ambulatory care.

3.     The Company recognizes net patient service revenue in the period services are provided, based upon the amounts it is to receive from patients and third-party payors, including Medicare, Medicaid, and managed care payors.  The portion of revenue not yet collected is recorded as accounts receivable until payment is received.

4.     A self-described critical aspect of Ardent Health's operations is the collection of accounts receivable.  This includes the framework by which the Company determines the collectability of such accounts, *i.e.*, whether amounts will ultimately be paid or must be written off.  Timely writing-off uncollectable accounts stemming from claim denials by third-party payors, or uninsured or underinsured patients who cannot pay the bill, is crucial because failure to do so would overstate Ardent Health's accounts receivable balance.

5.     Since May 2022, Ardent Health outsourced its revenue cycle management functions to Ensemble Health Partners ("Ensemble").  Pursuant to relevant service agreements, Ensemble provides "end-to-end revenue cycle services" for Ardent Health, including collections from patients and third-party payors as well as assistance in appealing payor claim denials.

6.     This case arises out of Defendants' misrepresentations regarding Ardent Health's accounts receivable.  During the Class Period, Defendants publicly reported the Company's accounts receivable on a quarterly basis.  They further stated that Ardent Health employed an active monitoring process to determine the collectability of its accounts receivable, and that this process included "detailed reviews of historical collections" as a "primary source of information." Further, Defendants represented that Ardent Health considered "trends in federal and state governmental healthcare coverage" and that its "management determines [when an] account is uncollectible, at which time the account is written off."[1]

---

[1] Unless otherwise stated, all emphasis in bold and italics is added, and all footnotes are omitted.

7.     When Defendants began to reveal increased claim denials by third-party payors, they downplayed the issue, stating that the increased payor denials were "turning [] more into a slow pay versus not getting paid," and did not write-off the uncollectible accounts.  In addition, Defendants represented that the Company maintained professional malpractice liability insurance in amounts "sufficient to cover claims arising out of [its] operations[.]"

8.     In truth, Ardent Health did not primarily rely on "detailed reviews of historical collections" in determining collectability of accounts receivable nor did "management determine[] [when an] account is uncollectible."  Instead, the Company's accounts receivable framework "utilized a 180-day cliff at which time an account became fully reserved."  This allowed Ardent Health to report higher amounts of accounts receivable during the Class Period, and delay recognizing losses on uncollectable accounts.  And Ardent Health did not even maintain professional malpractice liability insurance in amounts "sufficient to cover claims arising out of [its] operations[.]"  In truth, Ardent Health's professional liability reserves were insufficient to cover "significant social inflationary pressure in medical malpractice cases the past several years," which had been an "increasing dynamic year-over-year" in the Company's New Mexico market.

9.     On November 12, 2025, after market hours, Ardent Health revealed a $43 million decrease in third quarter 2025 revenue.  The decrease resulted from revised determinations of accounts receivable collectability after the Company transitioned to a new revenue accounting system and from purported "recently completed hindsight evaluations of historical collection trends."  The new system—called the Kodiak RCA net revenue platform—provided management with "additional information to more precisely" determine accounts receivable collectability, including "more timely consideration of payor denial and payment trends."  Defendant Lumsdaine revealed that the new system "recognizes reserves earlier in an account's life cycle" compared to the Company's prior

collectability framework, which "had utilized a 180-day cliff at which time an account became fully reserved."

10.    Ardent Health also announced a cut to 2025 EBITDA guidance of $57.5 million at the midpoint, or about 9.6%, from $575 million – $625 million to $530 million – $555 million because of "persistent industry-wide cost pressures," including "payer denials."  In addition, Ardent Health recorded a $54 million increase in professional liability reserves "with respect to recent settlements and ongoing litigation arising from a limited set of claims between 2019 and 2022 in New Mexico" as well as "consideration of broader industry trends, including social inflationary pressures."

11.    On this news, the price of Ardent Health stock fell $4.75 per share, or nearly 34%, from $14.05 per share on November 12, 2025, to close at $9.30 per share on November 13, 2025, on unusually heavy trading volume.

12.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13.    Plaintiff's claims arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

14.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

15.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Many of the acts charged herein, including the

dissemination of materially false and/or misleading information, occurred in substantial part in this District. In addition, the Company's principal executive offices are located in this District.

16. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

17. Plaintiff is Dhruv Postiwala. As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Ardent Health securities during the Class Period and has been damaged thereby.

18. Defendant Ardent Health is incorporated under the laws of Delaware with its principal executive offices located in Brentwood, Tennessee. Ardent Health's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ARDT."

19. Defendant Bonick was the Company's CEO at all relevant times.

20. Defendant Lumsdaine was the Company's CFO at all relevant times.

21. Defendants Bonick and Lumsdaine (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the

adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Ardent Health is a holding company that has affiliates that operate acute care hospitals and other healthcare facilities and employ physicians. Ardent Health and its affiliates operate in eight mid-sized urban markets across six states: Texas, Oklahoma, New Mexico, New Jersey, Idaho, and Kansas. The Company delivers care through a system of 30 acute care hospitals, approximately 280 sites of care, and over 1,800 providers that are either employed by or affiliated with Ardent Health.[2]

23.     The Company and its affiliates provide both general and specialty services, including internal medicine, general surgery, cardiology, oncology, orthopedics, and emergency services, within inpatient and ambulatory care settings. Ardent Health also operates a network of ambulatory facilities and telehealth services, including primary and specialty care clinics, ambulatory surgery centers, urgent care centers, free-standing emergency departments, and diagnostic imaging centers.

24.     Ardent Health's revenue is primarily comprised of net patient service revenue. The Company recognizes net patient service revenue in the period in which it provides services and based upon the amounts it expects to receive from patients and third-party payors.

---

[2] On June 3, 2025, Ardent Health changed its name from Ardent Health Partners, Inc. to Ardent Health, Inc. to align its legal name with its practice of referring to the organization as "Ardent Health."

25.     A critical aspect of Ardent Health's operating performance is collection of accounts receivable, primarily from Medicare, Medicaid, managed care payors, other third-party payors, and patients.  Ardent Health told investors that it routinely reviews accounts receivable balances by monitoring several metrics, including historical cash collections.  In addition, Ardent Health purported to rely on the results of "detailed reviews of historical collections" at its facilities as a primary source of information in determining the collectability of its accounts receivable (the "hindsight analysis").

26.     Since May 2022, Ardent Health outsourced its revenue cycle management functions to Ensemble.  Pursuant to relevant service agreements with Ensemble, Ensemble provides "end-to-end revenue cycle services" for Ardent Health.  This includes collections from patients and third-party payors and assistance in appealing payor claim denials.

**Defendants' False and Misleading Statements Issued During the Class Period**

27.     The Class Period begins on July 18, 2024, the day Ardent Health securities began trading on the NYSE.  On June 21, 2024, the Company filed a registration statement for its initial public offering ("IPO") with the SEC on Form S-1, which, after amendments, was declared effective on July 17, 2024 (the "Registration Statement").  The Registration Statement was signed by Defendants Bonick and Lumsdaine.  On July 18, 2024, Ardent Health filed a prospectus for its IPO on Form 424B4, which incorporated into and formed part of the Registration Statement.

28.     The Registration Statement detailed Ardent Health's process to determine the collectability of its accounts receivable.  The Registration Statement represented that Ardent Health engaged in an active monitoring process that included "detailed reviews of historical collections" and stated that the Company's "management determines [when an] account is uncollectible, at which time the account is written off."

29.     Specifically, in the section of the Registration Statement titled "Revenue recognition," the Registration Statement stated that "[t]he collection of accounts receivable, primarily from Medicare, Medicaid, managed care payors, other third party payors, and patients, is critical to our operating performance" and that "[o]ur collection procedures are followed until such time that management determines the account is uncollectible, at which time the account is written off."

30.     The Registration Statement also stated in the "Revenue recognition" section that, in determining the collectability of accounts receivable, "[w]e rely on the results of detailed reviews of historical collections at facilities that represent a majority of our revenues and accounts receivable (the "hindsight analysis") as a primary source of information[.]"  "We perform the hindsight analysis utilizing twelve-month rolling accounts receivable collection data."

31.     The Registration Statement also stated in the "Revenue recognition" section that "[w]e routinely review accounts receivable balances by monitoring historical cash collections as a percentage of trailing net operating revenue, as well as by analyzing current period revenue and admissions by payor, aged accounts receivable by payor, days revenue outstanding, and the composition of self-pay receivables."

32.     The Registration Statement further described Ardent Health's accounts receivable collectability analysis in a section titled "Risks related to our business and industry."  There, the Registration Statement stated that "[s]ignificant changes in payor mix, business office operations, economic conditions or trends in federal and state governmental healthcare coverage may affect our collection of accounts receivable and are considered" in accounts receivable collectability.

33.     The Registration Statement included Condensed Consolidated Balance Sheets that provided the Company's accounts receivable as of Mach 31, 2024 as follows:

| | March 31, 2024(1) | December 31, 2023(1) |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 372,766 | $ 437,577 |
| Accounts receivable | 722,677 | 775,452 |

34.     The Registration Statement discussed the Company's professional liability claims and coverage, stating that one of the "Risk factors" to its business included that it "may be subject to liabilities because of claims brought against our hospitals, physician practices, outpatient facilities or other business operations or against healthcare providers that provide services at our facilities." The Registration Statement also stated that Ardent Health "maintain[s] professional malpractice liability insurance and general liability insurance in amounts we believe are sufficient to cover claims arising out of the operations of our facilities."

35.     On August 14, 2024, Ardent Health issued its Form 10-Q for the quarterly period ended June 30, 2024 that was signed by Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of June 30, 2024 as follows:

| | June 30, 2024 [1] | December 31, 2023 [1] |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 334,538 | $ 437,577 |
| Accounts receivable | 720,989 | 775,452 |

36.     On November 7, 2024, Ardent Health issued its Form 10-Q for the quarterly period ended September 30, 2024 that was signed by Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of September 30, 2024 as follows:

| | September 30, 2024 [1] | December 31, 2023 [1] |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 563,142 | $ 437,577 |
| Accounts receivable | 705,747 | 775,452 |

37.     On November 7, 2024, the Company held an earnings call to discuss its third quarter 2024 financial results. During the earnings call, Defendant Bonick offered prepared

remarks in which he stated that the Company was "seeing elevated levels of payor denials" and that Ardent Health "generally view[s] them as aggressive and higher than they should be." He also stated that "[p]ayors have also been slower to pay claims" but that "we have managed these challenges with key assistance from our revenue cycle management partner, Ensemble."

38.     On January 14, 2025, Defendants Bonick and Lumsdaine participated in the Ardent Health Partners, Inc. at J.P. Morgan Healthcare Conference. During the conference, J.P. Morgan analyst Benjamin Rossi noted that Defendants had recently stated that payor denials had "remain[ed] elevated over the past couple of years." He then asked the Individual Defendants to "speak to the changes coming from MCO [managed care organization] plans over the past year" and whether "those trends [are] generally consistent across your different books of business?"

39.     Defendant Lumsdaine responded, stating in pertinent part that the Company had "seen an acceleration" in frontline denials from 2023 to 2024, which had increased "approximately 30% for us" but that "we do believe that we can continue to work with our revenue cycle partner Ensemble Health, who has both great technology and know-how . . . at a payer level because this dynamic isn't spread equally among all payers. It differs by payer and their expertise in combating both this frontline denials as well as ultimately achieving successful overturning of those denials."

40.     On February 27, 2025, Ardent Health issued its Form 10-K for the fiscal year ended December 31, 2024 that was signed by Defendants Bonick and Lumsdaine. The Form 10-K provided the Company's accounts receivable as of December 31, 2024 as follows:

| | December 31, 2024 (3) | December 31, 2023 (3) |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $        556,785 | $        437,577 |
| Accounts receivable | 743,031 | 775,452 |

41. On May 7, 2025, Ardent Health issued its Form 10-Q for the quarterly period ended March 31, 2025 that was signed by Defendant Lumsdaine. The Form 10-Q provided the Company's accounts receivable as of March 31, 2025 as follows:

| Assets | | | | |
|---|---|---|---|---|
| Current assets: | | | | |
| Cash and cash equivalents | $ | 495,044 | $ | 556,785 |
| Accounts receivable | | 776,519 | | 743,031 |

42. On May 7, 2025, the Company held an earnings call to discuss its first quarter 2025 financial results. During the question-and-answer portion of the earnings call, Leerink Partners analyst Whit Mayo stated that he wanted to "follow up on the [e]levated denials." He stated that "I presume . . . this is a continuation of what you saw from last year or are there new changes in payer behavior or dispute resolution[.]"

43. Defendant Lumsdaine responded, stating in pertinent part that "[y]es, it's a continuation of last year, we really saw that step up happen in the middle of the year . . . There has been a continuation of a slowdown in payments even on clean claims. That's maybe again while denials have not accelerated, there's maybe been a bit of an acceleration from just a length of time to pay a clean claim, and that's certainly showing up impacting our cash flow numbers."

44. On May 14, 2025, Defendant Bonick participated in the Ardent Health Partners, Inc. at Bank of America Global Healthcare Conference. During the conference, BofA Securities analyst Joanna Gajuk noted that Defendant Bonick had mentioned "some increase in denials" and asked whether the Company expected them to accelerate or improve.

45. Defendant Bonick responded, stating in pertinent part that the rate of denials was "holding right now," but that it was "something that we're watching very closely." Defendant Bonick stated that "[i]t's turning [] more into a slow pay versus not getting paid. And so our revenue cycle partners are, again, key in battling that, making sure we've got clean claims going

off the door that we've got good documentation to support that."  Defendant Bonick continued, stating that "our revenue cycle partners [Ensemble] are really strong in terms of knowing what the payers need so we can get claims claimed.  And so our denial rates are, I'd say, doing much better than the industry averages[.]"

46.     On August 6, 2025, Ardent Health issued its Form 10-Q for the quarterly period ended June 30, 2025 that was signed by Defendant Lumsdaine.  The Form 10-Q provided the Company's accounts receivable as of June 30, 2025 as follows:

| | June 30, 2025 (1) | December 31, 2024 (1) |
|---|---|---|
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $        540,629 | $        556,785 |
| Accounts receivable | 758,641 | 743,031 |

47.     The statements referenced in ¶¶28-37, 39-41, 43, and 45-46 were materially false and misleading.  Ardent Health did not primarily rely on "detailed reviews of historical collections" in determining collectability of accounts receivable nor did "management determine[] [when an] account is uncollectible."  Instead, the Company's accounts receivable framework "utilized a 180-day cliff at which time an account became fully reserved."  This allowed Ardent Health to report higher amounts of accounts receivable during the Class Period, and delay recognizing losses on uncollectable accounts.  Because of this, the Company's reported financial position was materially false and misleading.  What's more, Ardent Health did not maintain professional malpractice liability insurance in amounts "sufficient to cover claims arising out of [its] operations[.]"  In truth, Ardent Health's professional liability reserves were insufficient to cover "significant social inflationary pressure in medical malpractice cases the past several years," which had been an "increasing dynamic year-over-year" in the Company's New Mexico market

## The Truth Emerges

48.     On November 12, 2025, after market hours, Ardent Health revealed a $43 million decrease in third quarter 2025 revenue.  The decrease resulted from revised determinations of accounts receivable collectability after the Company transitioned to a new revenue accounting system and from purported "recently completed hindsight evaluations of historical collection trends."  The new system—the Kodiak RCA net revenue platform, which is widely used in Ardent Health's industry—purportedly provided management with "additional information to more precisely" determine accounts receivable collectability, including "more timely consideration of payor denial and payment trends."  During the corresponding earnings call the following morning, November 13, 2025, Defendant Lumsdaine revealed that the new system "recognizes reserves earlier in an account's life cycle" compared to the Company's prior collectability framework, which "had utilized a 180-day cliff at which time an account became fully reserved."

49.     On November 12, 2025, Ardent Health also announced a cut to 2025 EBITDA guidance of $57.5 million at the midpoint, or about 9.6%, from $575 million – $625 million to $530 million – $555 million because of "persistent industry-wide cost pressures," including "payer denials."

50.     Last, on November 12, 2025, Ardent Health recorded a $54 million increase in professional liability reserves "arising from a limited set of claims between 2019 and 2022 in New Mexico" as well as "consideration of broader industry trends, including social inflationary pressures." Defendant Lumsdaine stated in the corresponding earnings call the following morning, November 13, 2025, that the increase in professional liability reserves "relates to the New Mexico market where we have seen significant social inflationary pressure in medical malpractice cases the past several years."

Defendant Lumsdaine stated that "this is not new. There has been an increasing dynamic year-over-year of increasing premiums, increasing costs in the New Mexico market."

51. On this news, the price of Ardent Health stock fell $4.75 per share, or nearly 34%, from $14.05 per share on November 12, 2025, to close at $9.30 per share on November 13, 2025, on unusually heavy trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

52. Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Ardent Health securities during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of Ardent Health, and their families and affiliates.

53. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

54. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

A. Whether Defendants violated the Exchange Act;

B. Whether Defendants omitted and/or misrepresented material facts;

C. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

D. Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

E. Whether the price of Ardent Health's securities was artificially inflated;

F. Whether Defendants' conduct caused the members of the Class to sustain damages; and

G. The extent of damage sustained by Class members and the appropriate measure of damages.

55. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

56. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in securities class actions. Plaintiff has no interests that conflict with those of the Class.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## PRESUMPTION OF RELIANCE

58. At all relevant times, the market for the Company's common stock on the NYSE was an efficient market for the following reasons, among others:

A. The Company's shares met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

B. As a regulated issuer, Ardent Health filed periodic public reports with the SEC;

C. Ardent Health regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

D. Ardent Health was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

59. As a result of the foregoing, the market for Ardent Health securities promptly digested current information regarding Ardent Health from all publicly available sources and reflected such information in the price. Under these circumstances, all purchasers of Ardent Health's securities during the Class Period suffered similar injury through their purchases at artificially inflated prices, and the presumption of reliance applies.

60. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions.

<u>**NO SAFE HARBOR**</u>

61. Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability. Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false. None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by

Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

<u>**LOSS CAUSATION/ECONOMIC LOSS**</u>

62. Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class. During the Class Period, Plaintiff and the Class purchased Ardent Health's securities at artificially inflated prices and were damaged thereby. The price of Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses. As a result of their purchases of Ardent Health securities during the Class Period, Plaintiff and the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

<u>**SCIENTER ALLEGATIONS**</u>

63. During the Class Period, as alleged herein, the Individual Defendants acted with scienter because the Individual Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

64. The Individual Defendants permitted Ardent Health to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

65. The inference of the Individual Defendants' scienter is bolstered by statements made during the Class Period by the Individual Defendants themselves, including their admissions

of known elevated trends in payor denials during analyst and industry conferences. This also includes knowledge of increased costs in medical malpractice cases over the past several years, which Defendant Lumsdaine stated was "not new" and that there had been an increasing cost trend "year-over-year" in the Company's New Mexico market.

66.     The Individual Defendants made the challenged statements specified herein either knowing that they were materially false and misleading when made, or with reckless disregard for their truth. Given the Individual Defendants' positions within the Company and their direct involvement in and access to internal reports, metrics, and information concerning the matters addressed in their statements, the Individual Defendants knew, or were at least reckless in not knowing, that their challenged statements were inconsistent with the Company's actual financial position.

67.     Ardent Health's collectability of accounts receivable and corresponding framework to determine their collectability constitute core operations of the Company. As Defendants stated in the Registration Statement, "[t]he collection of accounts receivable, primarily from Medicare, Medicaid, managed care payors, other third-party payors, and patients, is critical to our operating performance." Given the admitted importance of this metric to Ardent Health's business, it constitutes core operations and further supports a strong inference of scienter.

68.     The Company's IPO further reinforces the inference of scienter. Defendants made several challenged statements in the Registration Statement issued to investors in connection with Ardent Health's IPO. The IPO process, and the extensive due diligence surrounding it, required the Individual Defendants to closely review and approve the Company's Registration Statement, thereby supporting a strong inference that Defendants knew, or were at least reckless in not knowing, that the challenged statements were materially false or misleading when made.

69.     What's more, because the IPO was a significant capital-raising event that generated substantial proceeds for the Company, Defendants had compelling reasons to ensure its success. Thus, the Individual Defendants had both the opportunity and incentive to issue statements that concealed or downplayed adverse facts specified herein, further supporting an inference of scienter.

70.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ardent Health, their control over, and/or receipt and/or modification of Ardent Health's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ardent Health, participated in the fraudulent scheme alleged herein.

71.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Ardent Health securities by disseminating materially false and misleading statements or concealing material adverse facts.  The scheme deceived the investing public regarding Ardent Health's business, operations, and management and the intrinsic value of Ardent Health securities and caused Plaintiff and members of the Class to purchase the Company's securities at artificially inflated prices.

## CLAIMS AGAINST DEFENDANTS

## COUNT I

**Violation of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

72.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ardent Health securities at artificially inflated prices.

74. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially inflated market prices for such securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ardent Health's business, as specified herein.

76. During the Class Period, Defendants made the false statements specified above which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal the truth about the Company's business, as specified herein, from the investing public and to support the artificially inflated prices of the Company's securities.

78. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ardent Health's securities. Plaintiff and the

Class would not have purchased the Company's securities at the prices they paid, or at all, had they been aware that the market prices had been artificially inflated by Defendants' fraudulent course of conduct.

79. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's securities during the Class Period.

80. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

81. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

82. The Individual Defendants acted as controlling persons of Ardent Health within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control—and did influence and control, directly or indirectly—the decision-making of the Company, including the content and dissemination of the various false and/or misleading statements. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

83. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the activities giving rise to the securities violations as alleged herein, and exercised the same.

84. As described above, the Company and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act. As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Ardent Health securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensatory damages and equitable relief in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial.

Dated: January 7, 2026                                    Respectfully submitted,

**WADE B. COWAN, ATTORNEY AT LAW**

  */s/ Wade B. Cowan*
Wade B. Cowan (SC#9403)
P.O. Box 50617
Nashville, TN 37205
Telephone: (615) 390-6652
wcowan@dhhrplc.com

**BLEICHMAR FONTI & AULD LLP**
Javier Bleichmar (*pro hac vice* forthcoming)
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

-and-

Ross Shikowitz (*pro hac vice* forthcoming)
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960
rshikowitz@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (212) 205-3960
amccall@bfalaw.com

*Counsel for Plaintiff Dhruv Postiwala*

## <u>CERTIFICATION</u>

I, Dhruv Postiwala, hereby certify as follows:

1.      I have reviewed a class action complaint against Ardent Health, Inc. ("Ardent Health") and others alleging violations of the federal securities laws and have authorized its filing.

2.      I did not purchase or sell securities of Ardent Health at the direction of counsel, or in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as lead plaintiff on behalf of the Class in this matter, including providing testimony at deposition and trial, if necessary.

4.      My transactions in the Ardent Health securities that are the subject of this litigation during the Class Period are reflected in Schedule A, attached hereto.

5.      Other than in the instant action, I have not sought to serve as a representative party in a class action filed under the federal securities laws in the last three years.

6.      Beyond my *pro rata* share of any recovery, I will not accept payment for serving as lead plaintiff on behalf of the Class, except the reimbursement of such reasonable costs and expenses including lost wages as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Dated: 1/6/2026

Signed by:

*Dhruv Postiwala*

Dhruv Postiwala

**SCHEDULE A**

TRANSACTIONS IN

ARDENT HEALTH, INC.

| Transaction Type | Trade Date | Shares | Price Per Share | Cost/Proceeds |
|---|---|---|---|---|
| Purchase | 11/12/2025 | 1,644.00 | 14.32 | ($23,542.08) |
| Purchase | 11/12/2025 | 1,470.00 | 14.30 | ($21,021.00) |
| Purchase | 11/12/2025 | 4,000.00 | 14.29 | ($57,160.00) |